[L. A. No. 1073.    Department One.—July 8, 1902.]

## FIRST NATIONAL BANK OF RIVERSIDE, Respondent, v. ABRAHAM JACOBY, Appellant.

Drafts—Action against Drawee—Money Advanced by Bank—Notice to Collecting Bank—Agency—Evidence.—In an action for money alleged to have been advanced by the plaintiff bank at request of the drawee of a draft, who had authorized and paid previous drafts drawn by the same person, evidence is admissible for the defendant to show that the collecting bank was the correspondent and general agent of plaintiff, at defendant's residence, and that defendant had repeatedly notified the collecting bank before the draft in dispute was drawn or presented that he would pay no more such drafts unless money was due the drawer, and that nothing was then due, and that plaintiff had not advanced the funds to the drawer when notified of the dishonor of the draft.

Id.— Evidence Offered upon Cross-Examination — Objection for First Time upon Appeal.—Where plaintiff's cashier had testified that the money was advanced at defendant's request, and admissible evidence was offered upon his cross-examination to show that the money was advanced after the plaintiff had been notified not to advance it, it cannot be objected upon appeal, for the first time, that such evidence was not proper cross-examination.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial.  W. F. Fitzgerald, Judge.

The facts are stated in the opinion.

Charles T. Howland, and J. W. McKinley, for Appellant.

Purington & Adair, for Respondent.

COOPER, C.—This is an appeal from an order denying defendant's motion for a new trial.  The complaint contains

CXXXVII. Cal.—2

three counts in regard to the same cause of action. The second count states that on March 1, 1899, plaintiff, at the request of defendant, paid to one Kincell $457.87; that defendant promised to repay the same, but has failed to do so, and the sum remains due and unpaid. The court found the facts thus stated to be true, and ordered judgment accordingly.

The plaintiff's evidence shows that in January, 1899, defendant came to its office with Kincell and stated that Kincell would be engaged during the season in packing and shipping fruit for defendant; that in the business it would be necessary for Kincell to have money to pay for labor and material, desired plaintiff to advance the money Kincell might want for the purpose, and that Kincell would draw his drafts upon defendant in Los Angeles for amounts as needed; that if plaintiff would pay Kincell such drafts defendant promised to pay them when presented to him in Los Angeles; that plaintiff promised to comply with the request, relying upon the defendant's promise.

On the eleventh day of January, 1899, Kincell drew a draft upon defendant for $167.16, which was paid, and several like drafts for different amounts were drawn during January and February, 1899, in all cases the defendant paying the drafts when presented through plaintiff's correspondent in Los Angeles.

On March 1, 1899, Kincell drew a draft on defendant for $457.87, upon which plaintiff paid the money, passing it to the credit of Kincell.

When this draft was presented to defendant he refused to pay it. Defendant claims that prejudicial errors occurred, for which the order should be reversed.

The draft in question was sent by plaintiff to the Los Angeles National Bank—its correspondent—for collection. The prior drafts had been sent to the same bank and collected by it. In cross-examination of Bittinger, the cashier of plaintiff, certain questions were asked for the purpose of showing that the Los Angeles National Bank was the correspondent of plaintiff in Los Angeles for attending to all its business, that it was a general agent of plaintiff, and that defendant notified the Los Angeles bank before the draft in dispute was presented

that he would not pay any more drafts drawn on him by Kincell.

The court sustained plaintiff's objections to this class of questions, and we think the court erred in so doing.

The following is a sample of the questions asked in cross-examination to which the court sustained plaintiff's objections:—

"Q. Mr. Bittinger, you state that these drafts were acknowledged by the Los Angeles bank down here. Was that bank your correspondent in this city for the purpose of attending to your business here?"

"Q. Who presented these drafts to Mr. Jacoby in Los Angeles for the First National Bank of Riverside?"

The defendant was placed upon the stand in his own behalf, and testified that he never gave Kincell authority to draw upon him for any purpose, but that he had business relations with Kincell during the early part of the year 1899.

"Q. What were they?" To this question the court sustained plaintiff's objection on the ground that it was immaterial.

After defendant had given certain testimony, and further objections were made by plaintiff, the defendant's counsel said: "I understand your honor to rule that we are not entitled to ask this witness what notice he gave to the person presenting that draft?"

"*The Court.*—Yes, that is what I rule."

Counsel for defendant then asked him the following question:—

"Q. Did you ever, Mr. Jacoby, notify the First National Bank, plaintiff, either directly or through the persons presenting to you the draft, or any drafts drawn by Mr. Kincell upon you, that Mr. Kincell had no authority to draw any sight drafts upon you, and that you would not pay any more sight drafts drawn by Mr. Kincell upon you, unless at the time of the drawing and presentation of the drafts there was a sufficient sum of money due him from you to cover the amount of the draft?"

The court sustained the plaintiff's objection to this question.

The following then took place:—

"Q. [by defendant's counsel]. Now as to the draft in ques-

tion, Mr. Jacoby, do you remember when that was presented to you?

"*The Court.*—What is the object of this question?

"*Mr. Howland.*—To show that at the time the draft was presented and they were notified that it was dishonored, they still had the funds in their hands. That is the object.

"*The Court.*—What funds do you refer to?

"*Mr. Howland.*—The money which they claim they had paid for the draft.

"*The Court.*—The objection is sustained."

Counsel for defendant then offered to prove by defendant "that he notified the Los Angeles National Bank, who was representing the First National Bank of Riverside, that Mr. Kincell had no authority to draw the sight drafts upon him; that there was no money due Mr. Kincell from him, and that he would not pay any drafts drawn by Kincell against him unless at the time of the drawing and presentation there was due Mr. Kincell from him sufficient money to cover the amount of the draft; that notice was given on the fifteenth day of February, again on the twenty-seventh day of February, and again on the second day of March; that the last draft, the one in question, was presented to him on the afternoon of the second day of March and dishonored."

The court declined to hear the evidence, remarking, "It is simply consuming time unnecessarily." The evidence was offered for the purpose of proving the nature of the agency of the Los Angeles bank in connection with plaintiff, that plaintiff had notice that defendant would not pay any more drafts drawn upon him by Kincell, and that plaintiff still had the funds in its hands when notified of the dishonor of the drafts in question. The offered evidence went to the gist of the defense set up by defendant in his answer. If the Los Angeles bank was a general agent of plaintiff, and was notified, or if it was only an agent for the purposes of collecting the drafts, and was notified, and communicated such notice to plaintiff, the plaintiff would not have been justified in paying this draft. The evidence bearing upon the question should have been received, and then from such evidence the court should have determined the fact. Ordinarily, when a draft is sent from one bank to another for collection the bank to whom it is sent is the agent of the bank sending the draft only for

the purpose of collection, including, of course, the duties of taking all necessary steps as to notifying, protesting, etc.

But there is no such presumption as would preclude the proof of an agency of a general kind. Again, the findings are upon the count as to moneys advanced at defendant's request. If plaintiff was notified before it advanced the money, it could not have advanced it at defendant's request. Yet the court would not permit the defendant to prove that plaintiff was notified that the draft was dishonored while it still had the funds in its possession.

Defendant's theory was, that he did not request the advances to Kincell, and that he only paid the drafts when Kincell had credit or goods on hand to justify the defendant in paying them. As to whether the drafts were evidence of moneys advanced by plaintiff at defendant's request or were taken by plaintiff for collection, was the issue upon which the parties were contending. The defendant, by the rulings of the court, was deprived of putting in his testimony. It is said that the questions asked of Bittinger in cross-examination were not proper cross-examination. As he had testified that the money was advanced at the request of defendant, it would certainly be a very strict construction to hold that he might not be cross-examined fully as to whether or not the money was so advanced, by showing that it was advanced after the plaintiff had been notified not to advance it; but be that as it may, no such objection was made in the court below. Plaintiff will not be allowed here to make it for the first time.

We advise that the order be reversed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the order is reversed.       Harrison, J., Garoutte, J., Van Dyke, J.